KRISTIN A. LINSLEY, SBN 154148
  klinsley@gibsondunn.com
ROSEMARIE T. RING, SBN 220769
  rring@gibsondunn.com
LAURA K. O'BOYLE, *pro hac vice*
  loboyle@gibsondunn.com
JACOB T. SPENCER, *pro hac vice*
  jspencer@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:   415.393.8200

ASHLEY M. SIMONSEN, SBN 275203
  asimonsen@cov.com
PHYLLIS A. JONES, *pro hac vice*
  pajones@cov.com
ISAAC D. CHAPUT, SBN 326923
  ichaput@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone:   415.591.6000

*Attorneys for Defendant Meta Platforms, Inc.*
*f/k/a Facebook, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TAMMY RODRIGUEZ, individually and as the Personal Representative of the Estate of Selena Rodriguez,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., f/k/a FACEBOOK, INC.; SNAP, INC.; TIKTOK INC.; BYTEDANCE INC.,<br><br>Defendants. | CASE NO. 3:22-CV-00401-JD<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*Declaration of Rosemarie T. Ring and [Proposed] Order filed concurrently*<br><br>**Hearing:**<br>Date:          August 18, 2022<br>Time:          10:00 a.m.<br>Judge:         Hon. James Donato<br>Courtroom:  11, 19th Floor |

1

## <u>NOTICE OF MOTION AND MOTION</u>

2      PLEASE TAKE NOTICE THAT, on August 18, 2022, or as soon thereafter as the matter may

3   be heard, before the Honorable James Donato, in Courtroom 11, Floor 19, of the United States District

4   Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco,

5   California 94102, Defendant Meta Platforms, Inc., will and hereby does move this Court, under Federal

6   Rule of Civil Procedure 12(b)(6), for an order dismissing with prejudice all of the claims in Plaintiff's

7   Second Amended Complaint.

8      This Motion is based on the Memorandum of Points and Authorities submitted herewith, any

9   reply memorandum or other papers submitted in connection with the motion, the pleadings and other

10  documents filed in this action, any matter of which this Court may properly take judicial notice, and

11  any information presented at argument.

12

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

13      1.      Whether Plaintiff's claims are barred by Section 230, 47 U.S.C. § 230.

14      2.      Whether Plaintiff's claims are barred by the First Amendment.

15      3.      Whether Plaintiff has stated a claim for strict product liability, negligence, violations of

16  the UCL, or violations of federal trafficking laws.

17

18  DATED:  June 24, 2022           GIBSON, DUNN & CRUTCHER LLP

19

20                                  By:  ___/s/ Rosemarie T. Ring___
                                         ROSEMARIE T. RING

21

22  DATED:  June 24, 2022           COVINGTON & BURLING LLP

23

24                                  By:  ___/s/ Ashley M. Simonsen___
                                         ASHLEY M. SIMONSEN

25

26                                  Attorneys for META PLATFORMS, INC.

27

28

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................ 1

II.    SUMMARY OF ALLEGATIONS ..................................................................... 2

III.   ARGUMENT ...................................................................................................... 3

       A.     Plaintiff's Claims Are Barred by Section 230 ......................................... 3

              1.     Plaintiff's Claims Treat Meta as a Publisher ................................. 4

              2.     Plaintiff's Claims Depend on Third-Party Content ........................ 6

       B.     The First Amendment Bars Plaintiff's Claims ........................................ 7

       C.     The SAC Fails to State a Claim .............................................................. 8

              1.     Plaintiff's Strict Product Liability Claims Fail Because Instagram Does Not Satisfy The Legal Definition Of A "Product" ............................. 8

              2.     Plaintiff's Negligence Claim Fails Because Plaintiff Alleges No Legally Viable Duty ...................................................................................... 9

              3.     Plaintiff Does Not Plausibly Allege Causation ............................. 11

              4.     None of Plaintiff's UCL Theories Is Adequately Pled ................... 12

              5.     Plaintiff Does Not State a Claim Under the Federal Trafficking Laws .......... 13

IV.    CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................3

*Est. of B.H. v. Netflix, Inc.*,
2022 WL 551701 (N.D. Cal. Jan. 12, 2022) ........................................................1, 9

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ..............................................................................4, 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................8

*Brown v. Ent. Merchants Ass'n*,
564 U.S. 786 (2011) ..................................................................................................8

*Brown v. USA Taekwondo*,
11 Cal. 5th 204 (2021) ............................................................................................10

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ..................................................................................6

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ............................................................................................13

*Crosby v. Twitter, Inc.*,
921 F.3d 617 (6th Cir. 2019) ..................................................................................11

*Daniel v. Armslist, LLC*,
926 N.W.2d 710 (Wis. 2019) ....................................................................................6

*Doe #1 v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021) ............................................................................14, 15

*Doe 3 v. Red Roof Inns, Inc.*,
2020 WL 1872333 (N.D. Ga. Apr. 13, 2020) ........................................................15

*Doe II v. MySpace, Inc.*,
175 Cal. App. 4th 561 (2009) ....................................................................................6

*Doe v. Facebook, Inc.*,
No. 2019-16262 (151st Dist. Ct., Harris Cty., Tex. Oct. 4, 2019) ..........................9

*Doe v. Internet Brands, Inc.*,
824 F.3d 846 (9th Cir. 2016) ....................................................................................3

*Doe v. Kik Interactive, Inc.*,
482 F. Supp. 3d 1242 (S.D. Fla. 2020) ............................................................14, 15

*Doe v. Myspace, Inc.*,
528 F.3d 413 (5th Cir. 2008) ....................................................................................5

iv

*Doe v. Myspace, Inc.*,
   474 F. Supp. 2d 843 (W.D. Tex. 2007)..........................................................................10

*Doe v. Reddit, Inc.*,
   2021 WL 5860904 (C.D. Cal. Oct. 7, 2021) ..................................................................14

*Doe v. Twitter, Inc.*,
   555 F. Supp. 3d 889 (N.D. Cal. 2021) ................................................................5, 14, 15

*People ex rel. DuFauchard v. U.S. Fin. Mgmt., Inc.*,
   169 Cal. App. 4th 1502 (2009) .......................................................................................8

*Dyroff v. Ultimate Software Grp., Inc.*,
   934 F.3d 1093 (9th Cir. 2019)............................................................................2, 5, 6, 10

*Dyroff v. Ultimate Software Grp., Inc.*,
   2017 WL 5665670 (N.D. Cal. Nov. 26, 2017)...............................................................10

*Ellis v. Advanta Bank*,
   2017 WL 1436249 (N.D. Cal. Apr. 24, 2017) .................................................................3

*Eurosesmillas, S.A. v. PLC Diagnostics, Inc.*,
   2019 WL 1960342 (N.D. Cal. May 2, 2019) ................................................................12

*Fair Hous. Council v. Roommates.com, LLC*,
   521 F.3d 1157 (9th Cir. 2008).................................................................................3, 4, 7

*Fields v. Twitter, Inc.*,
   881 F.3d 739 (9th Cir. 2018).........................................................................................11

*Fields v. Twitter, Inc.*,
   217 F. Supp. 3d 1116 (N.D. Cal. 2016) ........................................................................5, 6

*Force v. Facebook, Inc.*,
   934 F.3d 53 (2d Cir. 2019).............................................................................................5

*Franklin v. X Gear 101, LLC*,
   2018 WL 3528731 (S.D.N.Y. July 23, 2018) .................................................................4

*Gamache v. Airbnb, Inc.*,
   2017 WL 3431651 (Cal. Ct. App. Aug. 10, 2017).........................................................11

*Gavra v. Google, Inc.*,
   2013 WL 3788241 (N.D. Cal. July 17, 2013)................................................................11

*Geiss v. Weinstein Co. Holdings LLC*,
   383 F. Supp. 3d 156 (S.D.N.Y. 2019)...........................................................................14

*Godwin v. Facebook, Inc.*,
   160 N.E. 3d 372 (Ohio Ct. App. 2020) ....................................................................10, 11

*Gonzalez v. Google LLC*,
   2 F.4th 871 (9th Cir. 2021) .....................................................................................1, 5, 6

*Graham v. Wells Fargo Bank, N.A.*,
   2017 WL 86013 (N.D. Cal. Jan. 10, 2017)...................................................................13

v

*Green v. ADT, LLC*,
   2016 WL 3208483 (N.D. Cal. June 10, 2016) .................................................................8

*Gregory v. Albertson's, Inc.*,
   104 Cal. App. 4th 845 (2002) ..........................................................................................13

*Hamm v. Mercedes-Benz USA, LLC*,
   2022 WL 913192 (N.D. Cal. Mar. 29, 2022).....................................................................12

*Herrick v. Grindr LLC*,
   765 F. App'x 586 (2d Cir. 2019) .......................................................................................5

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018)...........................................................................................13

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
   515 U.S. 557 (1995) ..........................................................................................................7

*Intellect Art Multimedia, Inc. v. Milewski*,
   2009 WL 2915273 (N.Y. Sup. Ct. Sept. 11, 2009) ...........................................................9

*Izzarelli v. R.J. Reynolds Tobacco Co.*,
   321 Conn. 172 (2016) .......................................................................................................8

*J.B. v. G6 Hosp., LLC*,
   2021 WL 4079207 (N.D. Cal. Sept. 8, 2021) ..................................................................14

*J.B. v. G6 Hosp., LLC*,
   2020 WL 4901196 (N.D. Cal. Aug. 20, 2020)..................................................................14

*James v. Meow Media, Inc.*,
   300 F.3d 683 (6th Cir. 2002)........................................................................................8, 9

*Jane Doe No. 14 v. Internet Brands, Inc.*,
   No. 2:12-CV-3626-JFW (C.D. Cal. Nov. 14, 2016) .......................................................10

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009).........................................................................................13

*Kimzey v. Yelp!, Inc.*,
   836 F.3d 1263 (9th Cir. 2016)...................................................................................4, 6, 7

*Klayman v. Zuckerberg*,
   753 F.3d 1354 (D.C. Cir. 2014) ........................................................................................5

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ..................................................................................................12

*Lazo v. Bank of Am., N.A.*,
   2012 WL 1831577 (N.D. Cal. May 18, 2012) .................................................................13

*Lemmon v. Snap, Inc.*,
   995 F.3d 1085 (9th Cir. 2021)...........................................................................................5

*McIndoe v. Huntington Ingalls Inc.*,
   817 F.3d 1170 (9th Cir. 2016)...........................................................................................8

*Merritt v. Countrywide Fin. Corp.*,
   2015 WL 5542992 (N.D. Cal. Sept. 17, 2015) .................................................................8

*Miami Herald Publ'n Co. v. Tornillo*,
   418 U.S. 241 (1974) ......................................................................................................1, 7

*Milwaukee Elec. Tool Corp. v. Superior Court*,
   15 Cal. App. 4th 547 (1993) ..........................................................................................10

*Modisette v. Apple Inc.*,
   30 Cal. App. 5th 136 (2018) ...........................................................................2, 9, 11, 12

*Moore v. Mars Petcare US, Inc.*,
   966 F.3d 1007 (9th Cir. 2020)........................................................................................13

*NetChoice, LLC v. Att'y Gen. of Fla.*,
   34 F.4th 1196 (11th Cir. 2022) ......................................................................................1, 7

*NetChoice, LLC v. Paxton*,
   142 S. Ct. 1715 (2022) .....................................................................................................7

*NetChoice, LLC v. Paxton*,
   2021 WL 5755120 (W.D. Tex. Dec. 1, 2021) ..................................................................7

*O'Handley v. Padilla*,
   2022 WL 93625 (N.D. Cal. Jan. 10, 2022) ......................................................................7

*Perez v. S. Pac. Transp. Co.*,
   218 Cal. App. 3d 462 (1990)...........................................................................................10

*Quinteros v. Innogames*,
   2022 WL 898560 (W.D. Wash. Mar. 28, 2022) ...............................................................9

*S.J. v. Choice Hotels Int'l*,
   473 F. Supp. 3d 147 (E.D.N.Y. July 20, 2020)...............................................................15

*Sanders v. Acclaim Ent., Inc.*,
   188 F. Supp. 2d 1264 (D. Colo. 2002) .............................................................................8

*Seismic Reservoir 2020, Inc. v. Paulsson*,
   785 F.3d 330 (9th Cir. 2015)............................................................................................3

*Sharma v. Volkswagen AG*,
   524 F. Supp. 3d 891 (N.D. Cal. 2021) ...........................................................................12

*Sharpe v. Puritan's Pride, Inc.*,
   466 F. Supp. 3d 1066 (N.D. Cal. 2020) ..........................................................................12

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010).........................................................................................12

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020)...........................................................................................12

*Stearns v. Select Comfort Retail Corp.*,
   2009 WL 4723366 (N.D. Cal. Dec. 4, 2009) ..................................................................12

vii

*Turner Broadcasting Sys., Inc., v. FCC,*
    512 U.S. 622 (1994) ................................................................................................................7

*United States v. Afyare,*
    632 F. App'x 272 (6th Cir. 2016) ........................................................................................15

*Wilson v. Midway Games, Inc.,*
    198 F. Supp. 2d 167 (D. Conn. 2002) ...............................................................................8, 9

*Winter v. G.P. Putnam's Sons,*
    938 F.2d 1033 (9th Cir. 1991) ...............................................................................................9

*Young v. Facebook, Inc.,*
    2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ....................................................................11

**Constitutional Provisions**

U.S. Const. amend. I ...............................................................................................................1, 7

**Statutes**

18 U.S.C. § 1591 ..........................................................................................................2, 3, 14, 15

18 U.S.C. § 1595 ..........................................................................................................2, 3, 14, 15

47 U.S.C. § 230 ...............................................................................................................1, 3, 14

Cal. Bus. & Prof. Code § 17203 ...............................................................................................12

**Rules**

Fed. R. Civ. P. 8 ..........................................................................................................................3

Fed. R. Cvi. P. 9 ........................................................................................................................13

**Treatises**

Restatement (Second) Torts § 315 (1965) .................................................................................11

Restatement (Second) of Torts § 402A (1965) ............................................................................8

Restatement (Third) of Torts § 19(a) (1998) ...............................................................................8

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.  INTRODUCTION**

3

Plaintiff Tammy Rodriguez filed this action seeking to hold Defendants liable for the death of

4

her young daughter, Selena Rodriguez.  ECF No. 67 ("SAC") ¶ 1.  Selena's death is a tragedy, and

5

Meta deeply sympathizes with Plaintiff and her family.  But the SAC fails to state a claim upon which

6

relief can be granted against Meta.

7

Section 230 of the Communications Decency Act, 47 U.S.C. § 230, bars all of Plaintiff's claims.

8

Section 230 forecloses any claim that seeks to impose liability on an interactive service provider like

9

Meta for the alleged effects of third-party content.  *See, e.g.*, *Gonzalez v. Google LLC*, 2 F.4th 871, 897

10

(9th Cir. 2021).  Plaintiff's core theory is that Instagram displays to users a "'feed'" consisting of

11

"photos and videos posted by accounts that the user follows," SAC ¶ 28; that it is "addictive" because

12

it uses "complex algorithms to select and promote content that is provided to users in an unlimited and

13

never-ending 'feed,'" *id*. ¶¶ 77-78; and that it is defective because the algorithms do not "distinguish[]

14

between harmful and innocuous content," *id.* ¶ 150.  But any challenge to Meta's display of third-party

15

content, by algorithm or otherwise, necessarily treats Meta as a publisher of such content, and thus is

16

barred by Section 230.  Nor can Plaintiff evade Section 230 by alleging that Instagram supplies "GIFs,

17

images, and music" that third-party *users* may choose to incorporate into their posts.  *Id.* ¶ 33.

18

Even if Section 230 did not bar Plaintiff's claims, the First Amendment would.  Fundamentally,

19

the SAC seeks to hold Meta liable for the content policies and practices it uses to organize and display

20

third-party content on Instagram, including its use of algorithms to sort third-party content.  But the

21

First Amendment prohibits forcing a communications platform to adopt or enforce particular content

22

policies or practices.  *See NetChoice, LLC v. Att'y Gen. of Fla.*, 34 F.4th 1196, 1213-14 (11th Cir.

23

2022).  As the Eleventh Circuit recognized in *NetChoice*, content moderation policies are themselves

24

an exercise of a platform's "editorial control and judgment" that is protected by the First Amendment.

25

*Id.* at 1210 (citing *Miami Herald Publ'n Co. v. Tornillo*, 418 U.S. 241, 258 (1974)).

26

Plaintiff's claims also fail on their merits as a matter of law.  The strict product liability claims

27

fail because "[t]here is no strict [product] liability for books, movies, or other forms of media," *Est. of*

28

*B.H. v. Netflix, Inc.*, 2022 WL 551701, at *3 (N.D. Cal. Jan. 12, 2022).  Plaintiff's negligence claim

fails because courts have declined to impose on internet platforms legal duties to their users.  *See, e.g.*, *Modisette v. Apple Inc*., 30 Cal. App. 5th 136, 144 (2018); *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1101 (9th Cir. 2019).  Moreover, the SAC does not plausibly allege causation.  Nor can Plaintiff state a claim under California's Unfair Competition Law ("UCL").  She has not pled that she is entitled to restitution or injunctive relief—the only remedies available to a private plaintiff under the UCL.  And she has not alleged that Meta's purported conduct was unlawful, fraudulent, or unfair.  Likewise, Plaintiff cannot state a claim against Meta under the federal trafficking laws, 18 U.S.C. §§ 1595 and 1591.  Among other flaws, the SAC alleges no facts showing that Meta knowingly "participat[ed] in a venture" with anyone who allegedly engaged in trafficking.  *Id.* § 1595(a).

Because these defects cannot be cured, the SAC should be dismissed with prejudice.

## II.  SUMMARY OF ALLEGATIONS

Meta operates an app—Instagram—that allows billions of users to post and share content.  SAC ¶¶ 25-36.  Plaintiff alleges that Instagram uses "algorithms to select and promote content that is provided to users in an unlimited … 'feed,'" *id.* ¶ 78, which is "comprised of photos and videos posted by accounts that the user follows," *id.* ¶ 28.  She also alleges that Instagram offers features such as "likes" and "followers" that "encourage users to share their videos and posts," *id.* ¶¶ 39, 69, and supplies "GIFs, images, and music" that users can include in their posts, *id.* ¶ 33.[1]

Instagram's terms of use require its users to be at least 13 years old.  SAC ¶ 64.  Despite this limit, Plaintiff alleges that her then-9-year-old daughter, Selena, was "given a computer tablet to access the internet," and shortly thereafter "downloaded Defendants' social media products."  *Id.* ¶ 103.  She "quickly became addicted to" Defendants' apps (Snapchat and TikTok, in addition to Instagram).  *Id.* ¶ 104.  Selena communicated with "over 2,500 different individuals" who allegedly connected with her via Defendants' services.  *Id.*  The SAC does not allege that Instagram recommended any of these contacts or affirmatively connected Selena with these individuals.  Rather, it alleges that Instagram's "public profile product feature" allowed adult users to initiate contact with other users, including

---

[1] Meta assumes for purposes of this motion that the allegations of the SAC are true.  Meta denies that it is a cause of Plaintiff's harm and notes that Plaintiff's allegations are inaccurate and incomplete in many respects.  In particular, Plaintiff ignores Meta's efforts to make its services safe and enjoyable for all of its users.

minors such as Selena. *Id.* ¶ 123.  The SAC alleges that Selena interacted with adult male users who "messaged and solicited" her "for sexual exploitive content and acts," and Selena "sent sexually explicit images … which were subsequently shared or leaked to her classmates." *Id.* ¶¶ 110-11; *see also id.* ¶¶ 115-32.  Plaintiff reports that she tried "multiple times to reduce or limit her daughter's use of social media" but was unsuccessful. *Id.* ¶ 105.  Selena tragically died by suicide on July 21, 2021. *Id.* ¶¶ 1, 136-37.

Plaintiff brings five claims against all Defendants, alleging strict liability for design defects (Count I) and failure to warn (Count II), negligence (Count III), violations of the UCL (Count IV), and a federal sex trafficking claim under 18 U.S.C. §§ 1595 and 1591 (Count V).

## III.  ARGUMENT

Complaints are subject to dismissal based on a dispositive legal issue, *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015), where they do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), or where they "fail[] to differentiate between the [d]efendants, as required by Federal Rule of Civil Procedure 8(a)(2)," *Ellis v. Advanta Bank*, 2017 WL 1436249, at *2 (N.D. Cal. Apr. 24, 2017).  Under these well-established standards, the SAC should be dismissed against Meta.

**A.  Plaintiff's Claims Are Barred by Section 230**

All of Plaintiff's claims are barred by Section 230, 47 U.S.C. § 230.  Section 230 protects "providers of interactive computer services against liability arising from content created by third parties." *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc). Section 230 mandates dismissal when (1) the defendant is a "provider … of an interactive computer service," and (2) the claim seeks to hold the defendant liable as a "publisher or speaker" of (3) content provided by someone other than the defendant interactive computer service provider.  47 U.S.C. § 230(c)(1).  Further, "no cause of action may be brought and no liability may be imposed" under any state law "inconsistent with" Section 230. *Id.* § 230(e)(3); *see Doe v. Internet Brands, Inc.*, 824 F.3d 846, 850 (9th Cir. 2016).  The statute thus creates an immunity from suit that must be applied as early in the case as possible to "protect websites not merely from ultimate liability, but [also] from having to fight costly and protracted legal battles." *Roommates.com*, 521 F.3d at 1175.

Meta is a provider of an "interactive computer service[]"—Instagram.  *See Franklin v. X Gear 101, LLC*, 2018 WL 3528731, at *19 (S.D.N.Y. July 23, 2018).  And despite Plaintiff's efforts to plead around Section 230, her claims ultimately seek to impose liability on Meta for its editorial decisions to display (or not) third-party content, *see* SAC ¶¶ 78, 150, 162-63, 171, and are therefore barred.

### 1.     *Plaintiff's Claims Treat Meta as a Publisher*

Plaintiff's attempt to "disclaim" seeking to hold Meta liable as the publisher of third-party content, SAC ¶ 92, is ineffective, since that is precisely what the SAC would do.  In evaluating whether a claim treats a defendant as a publisher, "what matters is not the name of the cause of action," but "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101, 1102 (9th Cir. 2009).  "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Roommates.com*, 521 F.3d at 1170-71.  A plaintiff cannot use "creative pleading" to "advance the same basic argument that the statute plainly bars," *i.e.*, that a defendant "published user-generated speech that was harmful to" the plaintiff. *Kimzey v. Yelp!, Inc.*, 836 F.3d 1263, 1265-66 (9th Cir. 2016).

Here, *all* of Plaintiff's claims seek to hold Meta liable for publishing user-generated content that allegedly harmed her daughter.  Count I alleges that Instagram's algorithms fail to "protect[] minor users from harmful content … [in] third-party posting[s]."  SAC ¶ 150.  Counts II and III allege that Meta failed to warn users about the potentially addictive effects and harms from viewing the "content of communications" by third parties on Instagram. *Id.* ¶¶ 193, 207.  And Count IV is premised on the conduct alleged in Counts I, II, and III. *See id.* ¶ 217.  More broadly, the heart of the SAC—an "addiction" theory—turns on the refrain that Defendants use "complex algorithms to select and promote content" from third parties "that is provided to users in an unlimited and never ending 'feed.'" *Id.* ¶ 78; *see also id.* ¶ 164 (Defendants fail to "protect minor users from sexually explicit content"); *id.* ¶¶ 162-63 (Defendants' "'recommendations'" and "[a]dvertising content" allegedly "steer[ed] [minor] users" to "harmful and exploitative content"); *id.* ¶ 171 (Defendants' "algorithms … are designed to … direct[] [users] to content that is progressively more and more stimulative").

Plaintiff cannot avoid Section 230 by pointing to allegedly "addicting" algorithms and

"scrolling" feeds that recommend third-party content.  *See*, *e.g.*, *Gonzalez*, 2 F.4th at 894-95.  "[R]ecommendations" are "not content in and of themselves," but "tools meant to facilitate the communication and content of others."  *Dyroff*, 934 F.3d at 1098.  And algorithms "automate [the platforms'] editorial decision-making"—a decision that does not remove Defendants' conduct from "the scope of publishing."  *Force v. Facebook, Inc.*, 934 F.3d 53, 67 (2d Cir. 2019).  However framed, Plaintiff's allegations challenge Meta's decisions to display (or not) third-party content and thus treat it as a publisher.  *See Barnes*, 570 F.3d at 1102 ("[P]ublication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content.").

Similarly, Plaintiff's product defect and negligent design theories fault Meta for designing Instagram to encourage users to view *too much* third-party content and for failing to prevent Selena from doing so.  *E.g.*, SAC ¶ 171.  Thus, "the nature of the alleged design flaw in this case—and the harm that is alleged to flow from that flaw—is directly related to the posting of third-party content."  *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 930 (N.D. Cal. 2021).  That stands in sharp contrast to *Lemmon v. Snap, Inc.*, where the alleged "danger" was a speed filter that purportedly encouraged driving unreasonably fast, a theory that "st[ood] independently of the content" and was "fully independent of Snap's role in monitoring or publishing third-party content."  995 F.3d 1085, 1093-94 (9th Cir. 2021).

Section 230 also bars Plaintiff's theory that Meta allegedly "fail[ed] to provide adequate warnings" or features to "protect minor users from [allegedly] harmful content."  SAC ¶¶ 10, 150.  "[T]he very essence of publishing is making the decision[s] whether to print or retract a given piece of content," as well as where and to whom to display it.  *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014).  And requiring a social network to post a warning about third-party content is a form of editing that implicates Section 230.  *See Herrick v. Grindr LLC*, 765 F. App'x 586, 591 (2d Cir. 2019); *Doe v. Myspace, Inc.*, 528 F.3d 413, 419-22 (5th Cir. 2008).  This is particularly true where, as here, Plaintiff's theory would require Meta to monitor and "report the frequency and duration of their minor users' screen time."  SAC ¶ 193; *see Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1126 (N.D. Cal. 2016), *aff'd*, 881 F.3d 739 (9th Cir. 2018) (failure-to-warn theory barred where it required defendant to "monitor[]" and "police" individual accounts).

Plaintiff's remaining theories suggest Defendants harmed Plaintiff's daughter by allegedly facilitating connections among users and allowing people to use their services to disseminate "harmful" content. *See* SAC ¶¶ 14, 150, 167.  Section 230 bars those theories as well.  *See, e.g.*, *Gonzalez*, 2 F.4th at 891, 893-96 (failure to remove content); *Dyroff*, 934 F.3d at 1098-99 (connecting users and making recommendations); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124-25 (9th Cir. 2003) (inappropriate postings); *Daniel v. Armslist, LLC*, 926 N.W.2d 710, 726 (Wis. 2019) (failing to adequately monitor content); *Doe II v. MySpace, Inc.*, 175 Cal. App. 4th 561, 572-75 (2009) (allowing minors to connect with adults who then harmed them).

### 2. *Plaintiff's Claims Depend on Third-Party Content*

Plaintiff's claims arise from allegedly harmful content provided by third parties.  *See* SAC ¶ 150 (alleging Defendants' "algorithms are not reasonably safe" because they permit "users" to view purportedly "harmful and exploitative content").  The core of the SAC—as detailed by the extensive excerpts from messages third parties sent Selena—is that Selena's mental health deteriorated as third parties requested sexually explicit images and pressured her when she would not comply.  *Id.* ¶¶ 115-34.  But third parties, not Meta, created and sent that alleged content.

Plaintiff's allegation that her daughter became addicted to social media, SAC ¶¶ 104-07, also depends on third-party content.  The SAC identifies features—such as "an endless feed of content," a "stream of notifications and alerts," and "rewards, including 'likes' and 'followers'"—that allegedly encourage "addictive use." *Id.* ¶¶ 29, 39, 48, 69, 107.  But again, "recommendations and notifications" are "tools meant to facilitate the communication and content of others"—"not content in and of themselves." *Dyroff*, 934 F.3d at 1098.  Section 230 protects "'features that are part and parcel of the overall design and operation of the website,'" however they are characterized.  *Fields*, 217 F. Supp. 3d at 1124.  And a theory that turns on the alleged effects of *too much* third-party content, rather than for harms from the *wrong kind* of third-party content, still necessarily arises from third-party content.

Finally, Plaintiff alleges that Instagram supplies "GIFs, images, and music" for users to post, which allegedly can "enhance the psychic harm and defamatory sting that minor users experience from malign third-party postings" but which are *not* allegedly illegal.  SAC ¶¶ 33, 181-83.  This theory fails for the same reasons as the "creative pleading" rejected in *Kimzey*, 836 F.3d at 1265.  There, Yelp could

not be held liable for users' starred reviews even though Yelp provided the feature allowing users to select a star rating. *Id.* at 1269-70. Allowing users to communicate using GIFs, videos, or star ratings "does not change the origin of the third-party content"—the users who posted the GIF, video, or star rating. *Id.* at 1270. Defendants do not "materially contribut[e]" to the allegedly illegal aspects of third-party communications by providing tools with which users can express themselves. *Roommates*, 521 F.3d at 1168-69, 1173.

**B.     The First Amendment Bars Plaintiff's Claims**

Plaintiff's claims are also barred by the First Amendment, to the extent she claims that her allegations only target Meta's "complex algorithms," instead of specific content of communications shared by other users.

As the Eleventh Circuit recognized in *NetChoice*, a communication platform's content moderation policies are "closely analogous to the editorial judgments" made by organizations or entities that host third-party speech, such as "parade organizers and cable operators," as their algorithms and other features largely center around curating speech provided by others. 34 F.4th at 1213 (citing *Tornillo*, 418 U.S. at 258, *Turner Broadcasting Sys., Inc., v. FCC*, 512 U.S. 622 (1994), and *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557 (1995)). Questions of "what content to include, exclude, moderate, filter, label, restrict, or promote" are "protected by the First Amendment." *O'Handley v. Padilla*, 2022 WL 93625, at *14 (N.D. Cal. Jan. 10, 2022). "[T]hat algorithms do some of the work that a newspaper publisher previously did" to make editorial decisions does not change the analysis. *NetChoice, LLC v. Paxton*, 2021 WL 5755120, at *8 (W.D. Tex. Dec. 1, 2021); *see also NetChoice, LLC v. Paxton*, 142 S. Ct. 1715 (2022) (Mem.) (vacating stay of preliminary injunction). Thus, the First Amendment protects editorial decisions and policies concerning "content in viewers' feeds or search results." *NetChoice*, 34 F.4th at 1213.

Plaintiff seeks to hold Meta liable "as the designer" of "complex algorithms" that "select and promote" third-party content for publication. SAC ¶¶ 75-76, 78, 93; *see id.* ¶ 29. And Meta's selection, arrangement, and promotion of content forms the basis of her alleged harm. *See, e.g.*, *id.* ¶ 74 ("algorithm-controlled feeds" are "detrimental to users' mental health"); *id.* at 57 (Prayer) (seeking injunction requiring Defendants to "remedy the unreasonably dangerous algorithms in their social

media products").[2]  Her claims are thus barred by the First Amendment.

**C.    The SAC Fails to State a Claim**

### 1.    *Plaintiff's Strict Product Liability Claims Fail Because Instagram Does Not Satisfy The Legal Definition Of A "Product"*

Counts I and II fail because intangible communications apps like Instagram are not products under California or Connecticut law.[3]  In California, a plaintiff may bring a strict product liability claim only with respect to "*tangible* goods—not intangible goods or services."  *Merritt v. Countrywide Fin. Corp.*, 2015 WL 5542992, at *22 (N.D. Cal. Sept. 17, 2015) (emphasis added), *aff'd*, 783 F. App'x 717 (9th Cir. 2019); *see also Green v. ADT, LLC*, 2016 WL 3208483, at *3 (N.D. Cal. June 10, 2016) ("product" is "'a physical article which results from a manufacturing process and is ultimately delivered to a consumer'").  Connecticut law defines "product" in the same way.  *See Izzarelli v. R.J. Reynolds Tobacco Co.*, 321 Conn. 172, 184 (2016) (recognizing the adoption of Restatement (Second) of Torts § 402A (1965), which defines products as tangible objects that can cause "physical harm").[4]

The SAC, however, does not target any tangible good, but rather "algorithms," communications from third parties, "'recommendations'" about content, and features such as "likes."  SAC ¶¶ 150-68.  Although the SAC labels Instagram a "product[]," *id.* ¶ 61, this Court is "not bound to accept as true [that] legal conclusion," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Neither California nor Connecticut law considers intangible websites or apps to be products for

---

[2] To the extent Plaintiff contends Meta failed to restrict content allegedly unsuitable for minors, *see* SAC ¶¶ 182-83, such claims also fail under the First Amendment.  *See, e.g.*, *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 794-95 (2011).  Several courts have rejected efforts to hold authors, publishes, and creators liable for content that a plaintiff alleges is unsuitable for minors and led to offline harm.  *Id.* at 798-99; *see also James v. Meow Media, Inc.*, 300 F.3d 683, 695-99 (6th Cir. 2002) (First Amendment protected makers of video games, movies, and websites from liability for school shooting); *Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167, 181-82 (D. Conn. 2002) (First Amendment immunized video game publishers from liability where plaintiff alleged video game "addicted" assailant and led him to murder decedent); *Sanders v. Acclaim Ent., Inc.*, 188 F. Supp. 2d 1264, 1279-81 (D. Colo. 2002) (First Amendment protected video game publishers from responsibility for Columbine school shooting).

[3] Because California and Connecticut law are in accord on this issue, this Court need not decide at this stage which state's law applies.  *See, e.g.*, *People ex rel. DuFauchard v. U.S. Fin. Mgmt., Inc.*, 169 Cal. App. 4th 1502, 1520 (2009) (first step in analyzing choice of law is "determination of whether the potentially concerned states have different laws").

[4] The Restatement (Third) of Torts § 19(a) (1998) likewise "defines a 'product' subject to strict liability as 'tangible personal property distributed commercially for use or consumption.'"  *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016) (emphasis omitted).

purposes of product liability claims. *See Netflix*, 2022 WL 551701, at *3 ("There is no strict liability for books, movies, or other forms of media" under California law); *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034-36 (9th Cir. 1991) (California product liability law does not extend beyond "tangible items" to "ideas and expression"); *Wilson*, 198 F. Supp. 2d at 172-73 (allegedly addictive video game was not a product under Connecticut law). And courts nationwide have rejected attempts to extend product liability to software, websites, or apps that facilitate user communication. *See, e.g.*, *Doe v. Facebook, Inc.*, No. 2019-16262 (151st Dist. Ct., Harris Cty., Tex. Oct. 4, 2019) (Instagram is "not a product") (attached as Exhibit A to Declaration of Rosemarie T. Ring); *Quinteros v. Innogames*, 2022 WL 898560, at *7 (W.D. Wash. Mar. 28, 2022) (dismissing claim against creator of allegedly "addictive" online video game because it was "not a product"); *Intellect Art Multimedia, Inc. v. Milewski*, 2009 WL 2915273, at *7 (N.Y. Sup. Ct. Sept. 11, 2009) (a "website [that] is a forum for third-party expression" is a "'service'"); *James*, 300 F.3d at 700-01 ("video games, movies, and internet sites" are not "products").

There are good reasons why courts have rejected attempts to expand product liability law to cover communications apps. "The purposes served by products liability law … are focused on the tangible world and do not take into consideration the unique characteristics of ideas and expressions." *Winter*, 938 F.2d at 1034. The threat of strict liability "could seriously inhibit those who wish to share thoughts and theories." *Id.* at 1035. And that is what Plaintiff seeks to do, by "hold[ing] Defendants liable for their own speech," SAC ¶ 101, as well as third-party communications on their services.

### 2. Plaintiff's Negligence Claim Fails Because Plaintiff Alleges No Legally Viable Duty

The SAC does not allege a recognized legal duty, which is an "essential element" in "'any negligence suit.'" *Modisette*, 30 Cal. App. 5th at 143. "California courts have declined to find a duty as a matter of law … for claims implicating expression," and "have required a 'very high degree of foreseeability' in cases concerning suicide and have found it difficult to satisfy." *Netflix*, 2022 WL 551701, at *3.

Plaintiff alleges that "Defendants had a duty to exercise reasonable care and caution to protect users from foreseeable harms arising out of use of their social media products." SAC ¶ 200; *see also id.* ¶ 202. But websites do not owe users a legal duty when they "facilitate[] communication, in a

9

content-neutral fashion, of [their] users' content." *Dyroff*, 934 F.3d at 1101. This result does not change because the SAC alleges that some users may engage in "self-destructive behaviors" on the website. SAC ¶ 201. The *Dyroff* plaintiff similarly alleged that a website had a duty to design its "recommendations and notifications" to stop users from connecting with other users for harmful reasons, such as to buy and sell drugs. 934 F.3d at 1095, 1101. But such actions to facilitate communication are "nonfeasance" (*i.e.*, failure to take affirmative steps to help the user), which does not create "an ordinary duty of care." *Id.* at 1100-01; *see also Jane Doe No. 14 v. Internet Brands, Inc.*, No. 2:12-CV-3626-JFW (C.D. Cal. Nov. 14, 2016), ECF No. 51 at 7 (website had "no duty" under California law "to warn … users that they were at risk of being victimized by [a] rape scheme").

Plaintiff next asserts that Defendants are "product manufacturers" that owe "a duty to exercise ordinary care in the manufacture, marketing, and sale of their products." SAC ¶ 202. But again, communications services are not "products." *See supra*, at 8-9. Negligent design is an "alternate" theory to strict liability for "a plaintiff injured by an allegedly defective *product*"—not a license to apply product liability concepts to services and intangible goods. *Milwaukee Elec. Tool Corp. v. Superior Court*, 15 Cal. App. 4th 547, 557 (1993) (emphasis added).

Plaintiff also likens websites to "physical business owners" that owe a duty to users as "business invitees." SAC ¶ 203. But *physical* premises liability does not apply to "digital" premises or "digital" defects, and websites do not have a "special relationship" with their users. *Dyroff*, 934 F.3d at 1101; *see also Dyroff v. Ultimate Software Grp., Inc.*, 2017 WL 5665670, at *14 (N.D. Cal. Nov. 26, 2017) (collecting authority). Unsurprisingly, courts have refused to analogize website users to "business invitees." *See, e.g., Doe v. Myspace, Inc.*, 474 F. Supp. 2d 843, 851 (W.D. Tex. 2007), *aff'd on other grounds*, 528 F.3d 413 (5th Cir. 2008); *Godwin v. Facebook, Inc.*, 160 N.E.3d 372, 380 (Ohio Ct. App. 2020).[5]

There is no duty, as alleged in SAC ¶ 208, to prevent third-party harm absent "a 'special relationship' with either the victim or the person who created the harm." *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 215 (2021). No such relationship exists between Instagram and its users. *Dyroff*, 934

---

[5] The theory of "attractive nuisance," SAC ¶ 201, is likewise reserved for physical premises. *See, e.g., Perez v. S. Pac. Transp. Co.*, 218 Cal. App. 3d 462, 467 (1990).

1   F.3d at 1101.  A contrary rule would expose Meta to the virtually limitless alleged duty to monitor and
2   curtail users' access, activities, and communications on its services.[6]

3         ### 3.       *Plaintiff Does Not Plausibly Allege Causation*

4         The SAC fails to state a claim for the independent reason that it does not plausibly allege that
5   any conduct by Meta proximately caused Plaintiff's injuries.  Rather, the SAC alleges that Selena's
6   injuries were the "proximate result" of interactions with third parties on Defendants' services, SAC
7   ¶ 112, and that bullying and predatory conduct by third parties were the "proximate cause of her
8   depression, anxiety, and suicidal ideation," *id.* ¶ 133.  There is no allegation that Instagram itself
9   suggested that Selena and/or those third parties interact with each other; it alleges only that some third
10  parties found Selena through "Instagram's public profile" feature.  *Id.* ¶ 123.  But allegations that a
11  defendant "create[d] the condition that made Plaintiffs' injuries possible" do not suffice to plead
12  proximate cause as a matter of law.  *Modisette*, 30 Cal. App. 5th at 154.  And courts routinely hold that
13  similar claims against online platforms for harm caused by third parties fail for a lack of proximate
14  causation.  *See, e.g.*, *Gamache v. Airbnb, Inc.*, 2017 WL 3431651, at *2-*3 (Cal. Ct. App. Aug. 10,
15  2017); *Fields v. Twitter, Inc.*, 881 F.3d 739, 748-49 (9th Cir. 2018); *Crosby v. Twitter, Inc.*, 921 F.3d
16  617, 624-25 (6th Cir. 2019).

17        Here, as in *Gamache*, *Fields*, and *Crosby*, the chain of causation is too attenuated.  According
18  to the SAC, (1) Selena was "given a computer tablet to access the internet" at age 9, SAC ¶ 103; (2) she
19  communicated with "over 2,500 different individuals" on social media, *id.* ¶ 104; (3) some of these
20  third parties shared "explicit images" that she posted or sent with her classmates, "increasing the
21  ridicule and embarrassment she experienced at school," *id.* ¶ 110; (4) other third parties "messaged and
22  solicited [her] for sexual exploitive content," *id.* ¶ 111; and (5) as a result of these events, Selena
23  tragically committed suicide at age 11, *id.* ¶¶ 136-37.  Because this chain of causation depends on the
24  communications and conduct of third parties, any alleged conduct by Meta is "too remotely connected

---

26  [6] *See, e.g.*, *Godwin*, 160 N.E.3d at 380 (Facebook had no "duty to control" its users, even assuming it
27  had the "ability to control" them with "trivial" effort (quoting Restatement (Second) Torts § 315
    (1965)); *Gavra v. Google, Inc.*, 2013 WL 3788241, at *2-*3 (N.D. Cal. July 17, 2013) (rejecting
28  negligence claim based on failure to remove videos because Google had not assumed such a duty, and
    in any event, Section 230 barred the claim); *Young v. Facebook, Inc.*, 2010 WL 4269304, at *5 (N.D.
    Cal. Oct. 25, 2010) (Facebook had no duty to condemn content that inspires or threatens violence).

1   with Plaintiff's injuries to constitute their legal cause."  *Modisette*, 30 Cal. App. 5th at 154.

2          **4.**       ***None of Plaintiff's UCL Theories Is Adequately Pled***

3          Plaintiff's UCL claim should also be dismissed, for three reasons.  *First*, Plaintiff has no basis

4   to seek the only remedies available: restitution and injunctive relief.  Cal. Bus. & Prof. Code § 17203;

5   *see Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1071 (N.D. Cal. 2020) (Donato, J.) (UCL

6   remedies "'are generally limited to injunctive relief and restitution'").  Plaintiff cannot seek restitution,

7   because Meta holds no "monies given to [Instagram] or benefits in which the plaintiff has an ownership

8   interest."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003).  And she lacks

9   standing to seek an injunction because she has "alleged no continuing or imminent injury."  *Sharma v.*

10   *Volkswagen AG*, 524 F. Supp. 3d 891, 908-09 (N.D. Cal. 2021).  Because Plaintiff has no basis to seek

11   either remedy available under the UCL, her claim under that statute should be dismissed.  *See, e.g.*,

12   *Eurosesmillas, S.A. v. PLC Diagnostics, Inc.*, 2019 WL 1960342, at *7-*8 (N.D. Cal. May 2, 2019)

13   (dismissing UCL claim because plaintiff was not entitled to any relief under the UCL).

14          *Second*, Plaintiff does not allege that she lacks an adequate remedy at law, as required for either

15   remedy under the UCL.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 n.2, 844 (9th Cir. 2020)

16   (affirming dismissal of restitution claims when plaintiff had adequate legal remedy).  For her other

17   claims, Plaintiff affirmatively seeks damages—by definition, a legal remedy, *id.* at 838—based on

18   allegations that are coextensive with her UCL claim.  SAC ¶ 214.  "[T]he availability of an adequate

19   legal remedy is [thus] clear from the face of the SAC and dictates dismissal of the UCL claim."  *Hamm*

20   *v. Mercedes-Benz USA, LLC*, 2022 WL 913192, at *2 (N.D. Cal. Mar. 29, 2022).

21          *Third*, even if Plaintiff had a basis to assert a UCL claim (she does not), she fails to state a claim

22   for relief under the unlawful, fraudulent, or unfair prongs of the UCL.  Plaintiff's unlawful UCL claim

23   fails because it is based on her common-law claims.  SAC ¶ 217; *see Shroyer v. New Cingular Wireless*

24   *Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) ("Because [the plaintiff] does not go beyond alleging

25   a violation of common law, he fails to state a claim under the unlawful prong of § 17200.").  And

26   "negligence and product liability claims may not constitute predicate acts for a UCL claim."  *Stearns*

27   *v. Select Comfort Retail Corp.*, 2009 WL 4723366, at *12 (N.D. Cal. Dec. 4, 2009).

28          Plaintiff's fraud UCL claim fails because Plaintiff has not adequately pled that "members of

the public are likely to be deceived" by Meta's conduct.  *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020).  Plaintiff alleges only generally that "Defendants stated in public comments that their products are not addictive," SAC ¶ 90, and that "their statements and omissions regarding the addictive and harmful nature of their products were misleading and therefore likely to deceive the members of the public," *id.* ¶ 218.  These allegations omit the "who, what, where, when, and how" of the alleged statements and thus fail under Federal Rule of Civil Procedure 9(b)'s heightened standard for pleading fraud.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *see, e.g., Graham v. Wells Fargo Bank, N.A.*, 2017 WL 86013, at *4 (N.D. Cal. Jan. 10, 2017) (Donato, J.) (dismissing UCL "fraud" claim for failure to satisfy Rule 9(b)).[7]

Finally, Plaintiff's unfair UCL claim fails under either the "tethering test" or the "balancing test" for evaluating non-competitor UCL claims.  *See* SAC ¶¶ 219-20.  Plaintiff has not identified a requisite public policy that is "'tethered' to *specific* constitutional, statutory, or regulatory provisions" that Meta allegedly violated.  *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002) (emphasis added).  Instead, she merely asserts that "Defendants' practices are unfair and violate the UCL because they offend established public policy."  SAC ¶ 219.  This Court should refuse to apply the balancing test, because the California Supreme Court has disapproved of UCL regulation through "amorphous" and "subjective notions of fairness."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 184-85 (1999).  But even if the "balancing" test applied, it would compel dismissal because Plaintiff offers only a conclusory assertion that "the harm [Defendants' alleged] practices cause to consumers greatly outweighs any benefits associated with them."  SAC ¶ 219.  Allegations that "merely parrot" the standards set forth in the balancing test are insufficient.  *Lazo v. Bank of Am., N.A.*, 2012 WL 1831577, at *12 (N.D. Cal. May 18, 2012).

### 5.    *Plaintiff Does Not State a Claim Under the Federal Trafficking Laws*

Plaintiff's trafficking claim is barred by Section 230.  Section 230 exempts from its scope "any

---

[7]  Plaintiff's allegations regarding congressional testimony in December 2021 (SAC ¶ 36) cannot salvage her claim.  Even if that testimony were "untrue" (it was not), Plaintiff cannot have relied on statements made months after her daughter passed away in July 2021.  *See Kearns*, 567 F.3d at 1126. To the extent Plaintiff intends to plead a fraudulent-omissions theory, the SAC does not allege any facts supporting any duty to disclose.  *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (without an "affirmative duty to disclose," a "failure to disclose" does not support a UCL fraud claim).

claim in a civil action brought under section 1595 of title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title." 47 U.S.C. § 230(e)(5)(A). This exemption does not apply here because Plaintiff has not adequately pled a claim under 18 U.S.C. § 1595, much less that Meta's conduct underlying her claim violates 18 U.S.C. § 1591.[8]

*First*, Plaintiff has not alleged that Meta knowingly "participat[ed]" in a sex trafficking venture with any trafficker. 18 U.S.C. § 1595(a). The "ordinary meaning" of the word "venture" requires "alleg[ing] that [Defendants] took part in a common undertaking or enterprise involving risk and potential profit" with the (unnamed) individuals who allegedly trafficked Selena. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021). Although district courts have varied in defining those terms, *see id.*, they have required an allegation of "'direct association'" with a trafficker or, at a minimum, "'a continuous business relationship between the trafficker and the [defendant] such that it would appear that the trafficker and the [defendant] have an established pattern of conduct or could be said to have a tacit agreement.'" *J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *9 (N.D. Cal. Aug. 20, 2020) (citing cases). And the defendant's "participation" must be "*in a sex-trafficking venture*, not participation in other activities." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) (emphasis in original).

The SAC alleges no facts that satisfy these elements. Plaintiff does not allege that Meta had any business relationship or took part in a common commercial enterprise with the "adult male users" who allegedly "messaged and solicited" Selena, SAC ¶ 111, or with the classmates and others to whom Selena allegedly sent images, *id.* ¶ 110. *Reddit*, 2021 WL 5860904, at *8 (Section 1595 requires allegation that defendant "made a business deal" or "ha[d] a[] monetary relationship" with traffickers). Nor does Plaintiff allege anything like an "ongoing pattern of conduct amounting to a tacit agreement" with any alleged traffickers. *Cf. Twitter*, 555 F. Supp. 3d at 922-23 (allegations that Twitter "enable[d]

---

[8] 47 U.S.C. § 230(e)(5)(A) expressly requires that the allegedly unlawful conduct violate Section 1591. *See, e.g.*, *J.B. v. G6 Hosp., LLC*, 2021 WL 4079207, at *4 (N.D. Cal. Sept. 8, 2021) ("[S]ection 230(e)(5)(A) withdraws immunity only for claims asserting that the defendant's own conduct amounts to a violation of section 1591."); *Doe v. Reddit, Inc.*, 2021 WL 5860904, at *7 (C.D. Cal. Oct. 7, 2021); *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1251 (S.D. Fla. 2020). Although one court has (erroneously) concluded that the conduct need only violate Section 1595, *see Twitter*, 555 F. Supp. 3d at 921, this Court need not reach the issue because Plaintiff has not adequately pled a claim under Section 1595.

sex trafficking on its platform," "was specifically alerted" to videos of victims, and "failed or refused to take action" plausibly established tacit agreement).

*Second*, the SAC does not plausibly allege that Meta "knew or should have known" about any attempted trafficking involving Selena.  18 U.S.C. § 1595(a).  Instead, it alleges that Defendants "are aware" generally of "predatory users" on their platforms, are able to detect "sexually explicit content" on their apps, and thus know "that a significant number of minor users" send such content.  *See* SAC ¶¶ 14, 35, 225-27.  But Section 1595 requires *specific* (actual or constructive) knowledge of, and participation in, a trafficking "venture" involving the *specific* victim.  *See Red Roof Inns*, 21 F.4th at 723 (plaintiff must plausibly allege that defendants "knew or should have known that the venture violated the TVPRA as to the [plaintiffs]"); *cf. Twitter*, 555 F. Supp. 3d at 925 (constructive knowledge plausibly alleged where plaintiffs "alerted Twitter that the Videos were created under threat when Plaintiffs were children").  As a result, the SAC does not support a sex trafficking claim.  *See S.J. v. Choice Hotels Int'l*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. July 20, 2020) ("knowledge … of a general sex trafficking problem" is insufficient).

*Third*, because Plaintiff cannot plead a claim under Section 1595, she cannot plead a claim under Section 1591, which also "requires knowing and active participation in sex trafficking by the defendants."  *Kik Interactive*, 482 F. Supp. 3d at 1251; *see* 18 U.S.C. § 1591(e)(4) (defining "participation in a venture" to mean "knowingly assisting, supporting, or facilitating a violation of" Section 1591(a)(1)).  The SAC alleges no facts suggesting that Meta coordinated or even communicated with individuals messaging Plaintiff's daughter, much less knowingly participated in their alleged efforts to "traffic" her.  *See United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) ("sex-trafficking venture" exists only where "[t]wo or more people … engage in sex trafficking together"); *Doe 3 v. Red Roof Inns, Inc.*, 2020 WL 1872333, at *3 (N.D. Ga. Apr. 13, 2020) ("Association alone cannot establish liability; instead, knowledge and 'some participation in the sex trafficking act itself must be shown.'" (citation omitted)).

## IV.  CONCLUSION

Because Plaintiff fails to state a claim on which relief could be granted, and because amendment would be futile, Meta respectfully requests that the SAC be dismissed with prejudice.

1    DATED:  June 24, 2022                    GIBSON, DUNN & CRUTCHER LLP

2

3                                             By:    _/s/ Rosemarie T. Ring_
4                                                    ROSEMARIE T. RING

5

6    DATED:  June 24, 2022                    COVINGTON & BURLING LLP

7

8                                             By:    _/s/ Ashley M. Simonsen_
9                                                    ASHLEY SIMONSEN

10

11                                            Attorneys for META PLATFORMS, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 3:22-CV-00401-JD